29
Exh A.

RECEIPT NUMBER

529794

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KURTIS HARRISON AND
BRITT HARRISON

        Plaintiffs,

v.

OAKLAND COUNTY, OAKLAND COUNTY
SHERIFF'S DEPARTMENT, MICHAEL BOUCHARD,
GARY MILLER, STACEY GREEN, JAMES AHEARN,
DOUGLAS EADER, ANTHONY BROWN, PAM NEWSOME,
MICHAEL McCABE, H. C. WALLACE, NANCY SCARLETT,
TIMOTHY ADKINS, SUSAN SAGE, and SARAH GOOCH
in their individual and official capacities,

        Defendants.

```
JUDGE : Rosen, Gerald E.
DECK  : S. Division Civil Deck
DATE  : 08/09/2005 @ 12:49:31
CASE NUMBER : 2:05CV73079
CMP KURTIS & BRITT HARRISON V.
OAKLAND COUNTY ET AL  (DA) SI
```

MAGISTRATE JUDGE MONA K. MAJZOUB

_____/

LAW OFFICE OF TRAINOR & TOOMBS
BY: CHRISTOPHER J. TRAINOR (P42449)
Attorney for Plaintiffs
6557 Highland Road, Suite 105
Waterford, MI 48327
(248) 886-8650

_____/

## COMPLAINT AND JURY DEMAND

      **NOW COMES** Plaintiffs, KURTIS AND BRITT HARRISON, by and through

their attorneys, LAW OFFICE OF TRAINOR & TOOMBS, and for their Complaint

against the above-named Defendants, states as follows:

1.    That Plaintiffs are citizens of the County of Genesee, State of Michigan.

2.    That Defendant Oakland County is a municipal corporation and governmental

      subdivision organized under the laws of the State of Michigan.

3.  That Defendant Oakland County Sheriff's Department is a governmental subdivision organized under the laws of the State of Michigan.

4.  Defendant Michael Bouchard is the Sheriff of Oakland County and at all times mentioned in this Complaint was acting under color of law and color of his authority as Sheriff.

5.  That the other individually-named-Defendants were employed by Oakland County and/or the Oakland County Sheriff's Department and at all times mentioned in this Complaint were acting under color of law.

6.  All relevant events giving rise to this lawsuit occurred in the County of Oakland, State of Michigan.

7.  That this is an action to enforce civil rights arising out of Plaintiff Kurtis' employment relationship pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq.

8.  This is also a civil action brought pursuant to 42 U.S.C. § 1983 against Defendants for purposeful discrimination, under color of law, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and other laws.

9.  Jurisdiction is vested in this Court pursuant to 28 U.S.C. §1331 [federal question].

10. That this Court has jurisdiction pursuant to 42 U.S.C. 2000e-5 and 28 U.S.C. 1331, 1343(4).

11.     That this Court has jurisdiction pursuant to 28 U.S.C. 1331, 1343(a)(3), and 1343(a)(4).  Jurisdiction for declaratory relief sought is also premised upon 28 U.S.C. 2201 and 2202.

12.     That the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest, costs, and attorney fees.

## FACTS

13.     Plaintiffs reallege and incorporate by reference each and every paragraph of this Complaint as though fully set forth herein.

14.     Plaintiff is a Caucasian male.

15.     On or about August 13, 2001, Plaintiff was hired by Defendant employer and at the time of his unlawful termination was an Oakland County Sheriff's Deputy at the main jail.

16.     Throughout the course of his employment with Defendant employer, Plaintiff performed his job duties in a manner that were satisfactory or better.

17.     That on or about July 13, 2004, Plaintiff Kurtis was deputy Sarah Gooch's training officer.

18.     During the training, Ms. Gooch would constantly talk about sexually-explicit topics.

19.     Plaintiff Kurtis became immediately aware that Gooch was libertine with her language, often employing the use of the word "F***."

20.     Gooch explained to Plaintiff Kurtis how she had been a "wild child" in college and told him about her sexual encounters with lesbian girlfriends.

3

21.   Ms. Gooch would constantly talk to Plaintiff Kurtis about "humping or f******."

22.   Ms. Gooch told Plaintiff Kurtis that her current supervisors, colleagues, and inmates all wanted to "get down her pants."

23.   In talking with Plaintiff Kurtis, Gooch referred to herself as "hot sauce" and simultaneously kissed her finger and touched her buttocks, while making a sizzling sound.

24.   Gooch continuously flaunted her breasts in front of Plaintiff Kurtis.

25.   Gooch also told Plaintiff Kurtis that one of the deputies in the jail had told her he had a $20,000 vibrator (referring to his Harley Davidson motorcycle) and constantly asked her for a ride.

26.   However, she told Plaintiff Kurtis that she had a $5.00 vibrator at home that worked just fine.

27.   She also stated to Plaintiff Kurtis that while at a local bar, two male deputies pushed her down on a pool table, declaring that they would have sex with her right then and there.

28.   Plaintiff Kurtis warned Gooch on numerous occasions that such behavior was inappropriate and that saying such things could get her into severe trouble, and proceeded to inform her of his personal experience with harassment where he received a fifteen day suspension when he stated that his wife allowed him to see other women because they were, at the time, in the process of getting a divorce.

29.   Despite Plaintiff Kurtis' warnings, Plaintiff Kurtis sent Gooch an AOL instant message to which she responded that she hated men and was going back to her lesbian days which she experienced in college.

30.   Plaintiff again Kurtis warned Gooch that she needed to be careful about her language and conversations, because it could get her into trouble.

31.   On or about July 30, 2004, after Gooch had been told that Plaintiff Kurtis had said hello, Gooch replied to another deputy, "He's just trying to f*** me," which was told to Plaintiff Kurtis.

32.   Immediately after hearing what Gooch had stated, Plaintiff Kurtis sought out Supervisor Robert Negri and made a complaint to him of Gooch's completely inappropriate conduct and reiterated that such conduct on Gooch's behalf must end.

33.   Supervisor Negri called Gooch and Plaintiff Kurtis into an office and Plaintiff Kurtis indicated that he wanted all the things that Gooch had been saying to stop, to which Gooch said okay.

34.   Negri asked Gooch whether anyone, including Plaintiff Kurtis, was harassing her and she responded in the negative and therefore did not want to file any complaint.

35.   After meeting with both parties, Supervisor Negri considered the matter concluded.

36.   On the same day, Sergeant Green (female supervisor of Plaintiff Kurtis) was made aware of what had taken place and asked Gooch into her office and inquired if she felt harassed, to which she responded in the negative.

37.   Gooch stated to Green that she did not need or desire to file a complaint, but gave Green a copy of an e-mail she had received from Plaintiff Kurtis.

38.   Sergeant Green told Plaintiff Kurtis that she wanted him to stop calling and e-mailing Gooch and that the two of them should not have contact with each other.

39.   The following day (July 31 or August 1), as Plaintiff Kurtis and Gooch were signing in together he apologized if she had gotten into trouble and that such a result was not his intention.

40.   Subsequently on August 3 or 4. Green approached Plaintiff Kurtis and accused him of disobeying a direct order for him to stay away from each other, but that such was not perceived as a direct order.

41.   Although Green indicated that Plaintiff Kurtis had "kicked her in the teeth," Plaintiff Kurtis was never written up.

42.   Green informed Lt. Herbert Homes of Plaintiff Kurtis' complaint and Holmes, Green, Sergeant Jacobsen, and Plaintiff Kurtis met and he reiterated the incessant sexual comments made by Gooch and that he wanted them to stop immediately.

43.   Holmes stated that he would get back with Plaintiff Kurtis in approximately one week to see what would be done with his complaint.

44.   Subsequent to Plaintiff Kurtis' complaint, he was removed from his normal duties and put in a booth and hospital watch.

45.   In a memorandum to Captain Wallace from Lieutenant Holmes dated August 10, 2004, the situation involving Gooch and Kurtis should be closed.

46.     However, in an October 20, 2004 memorandum sent to Captain Wallace from Holmes that a "further investigation" of the matter revealed that Plaintiff Kurtis was the protagonist of the event and that he was merely practicing damage control in reporting it first.

47.     Holmes later admitted that in fact, no further investigation had taken place and that he had no additional information and that he still believed that the matter should have been closed.

48.     Holmes told Plaintiff Kurtis that Major Eader ordered Plaintiff Kurtis to be put in the booth because of the complaint made against Gooch.

49.     Holmes said not to look at it as punishment but as a way for Plaintiff Kurtis' to study for his upcoming D-11 test.

50.     On or about November 15, 2004, Plaintiff Kurtis was required to appear before the Special Investigations Unit ("SIU").

51.     Once Plaintiff Kurtis arrived at the SIU interview room, Sergeant Miller and Lieutenant A'Hearn stated that Sheriff Bouchard authorized to investigate a complaint by Gooch, which she never made.

52.     While required to stay in the room, Miller and A'Hearn repeatedly asked questions about Gooch and falsely accusing him and threatened and harassed Plaintiff Kurtis.

53.     After being berated, falsely accused, and intensely interrogated over false charges, Plaintiff Kurtis sustained a nervous breakdown and was hospitalized and even entertained thoughts of suicide.

54.    The SIU was charged to investigate Gooch's complaint of sexual harassment notwithstanding the fact that Gooch never made such a complaint against Plaintiff Kurtis at any time.

55.    While Eader presumed that Gooch had made a complaint and had arranged for SIU to conduct an investigation, Gooch never made a sexual harassment complaint even after the Sheriff's directive to investigate.

56.    Thus even though there was not a sexual harassment complaint field by Gooch, the SIU nevertheless conducted an investigation to ultimately terminate Plaintiff Kurtis.

57.    On or about November 15, 2004, Plaintiff Kurtis was suspended pending the outcome of the SIU investigation in which it was alleged that Plaintiff Kurtis had harassed Gooch, even though he complained about Gooch first and it was never investigated.

58.    The SIU failed to investigate all leads into the matter.

59.    It was only after Plaintiff Kurtis presented a memorandum to Miller regarding Gooch's sexually explicit photographs to other deputies that the SIU interviewed various deputies who had stated that they received unsolicited e-mails from Gooch, sent from home and work, containing photographs of nude and topless women, some as recent as November 14, 2004.

60.    SIU, Eader, and upper level command possessed such information regarding Gooch, but never did anything with it, nor was Gooch ever reprimanded.

61.    Plaintiff Kurtis was terminated from his employment while Gooch did not receive discipline.

62.     Instead, the information was viewed as a smear campaign against Gooch and Plaintiff was ultimately terminated for reporting harassment.

63.     In fact, subsequent to making the sexual harassment complaint, Plaintiff Kurtis began to experience frequent and ongoing hostility from his shift sergeant, GREEN, who is a female.

64.     Green's actions were clearly in retaliation for his having made a complaint against Gooch.

65.     Although Green told Plaintiff Kurtis that he should not have direct contact with Gooch, there was no direct order ever made.

66.     As part of his termination, Green alleged that Plaintiff Kurtis disobeyed her direct order, even though she never wrote Plaintiff Kurtis up.

67.     On or about November 24, 2004, Plaintiff Kurtis was discharged for sexually harassing Gooch, who had a documented history of exhibiting sexually inappropriate behavior, in contravention of department policy, yet she was not terminated.

68.     Plaintiff Kurtis' termination was submitted to arbitration, and on July 20, 2005, the arbitrator rendered a decision in favor of Plaintiff Kurtis and held that Plaintiff Kurtis was to be reinstated to his past position with back seniority and back pay less any interim earnings.

69.     Plaintiff Kurtis was instructed to meet with Lieutenant Atkins on July 22, 2005 so that the two of them could meet and Plaintiff Kurtis could pick up his uniform.

70.   When Plaintiff Kurtis arrived at the Oakland County Sheriff's Department, Atkins stated that he would be watching Plaintiff Kurtis closely and that if he screwed up, Atkins would "nail you're a**."

71.   Atkins stated that Plaintiff Kurtis would not be receiving his gun or badge, and that he would be required to wear a plain khaki uniform.

72.   Atkins stated that Plaintiff Kurtis would not be allowed to wear any patches on his uniform and that this was the way things were done.

73.   However, upon information and belief, deputy Dudley, who was recently granted his job back, was given his badge, gun, and full uniform, while Plaintiff Kurtis was not.

74.   Atkins then proceeded to remove all shoulder and breast patches from Plaintiff Kurtis' uniform.

75.   Plaintiff Kurtis' MCOLES (Michigan state certification) was not activated and Atkins stated that if Plaintiff Kurtis did a good job, he would put in a good word, because he has a lot of pull.

76.   The stripped down uniform that Plaintiff Kurtis was required to wear has created a dangerous and hostile work environment for him.

77.   The jail inmates have immediately taken notice that Plaintiff Kurtis lacks a gun, badge, and "normal" uniform of a deputy, which has cause them to ignore his orders and commands to them.

78.   Because of the plain uniform he is now required to wear, which separates him from all other deputies, Plaintiff Kurtis is alienated from all other employees because he is compelled to wear a twenty-first century scarlet letter.

79.    In rendering a decision with respect to the 2004 termination of Plaintiff Kurtis, the arbitrator set aside the discharge and reinstated Plaintiff Kurtis to his past position with back seniority and back pay less any interim earnings, yet Defendants continue to retaliate and otherwise harass Plaintiff Kurtis.

80.    Furthermore, when Plaintiff Kurtis was disciplined in 2002 and upon resolution of the matter, the arbitrator ruled that the discipline could not be used for future punishment, however Defendants did just that in this instance, and in fact, Defendant Eader made reference to the 2002 termination on various occasions.

81.    Plaintiff Kurtis timely filed a charge of Sex Discrimination and retaliation with the Michigan Department of Civil Rights and the United States Equal Employment Opportunity Commission and brings this action timely. **(See attached as Exhibit A).**

## COUNT I
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## SEX HARASSMENT—HOSTILE WORK ENVIRONMENT

82.    Plaintiff incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

83.    Title VII protects employees from being subjected to unlawful discrimination and unlawful employment practices.

84.    Plaintiff Kurtis was a Caucasian male and was subject to repeated and numerous incidents of unwelcome sexual harassment by a co-worker, deputy Sarah Gooch.

85.   Gooch repeatedly flaunted her breasts in front of Plaintiff Kurtis, repeatedly referred to herself as "hot sauce," frequently spoke about her wild college days and her multiple lesbian experiences, constantly stated that her supervisors and co-workers wanted to "hump" and "f***" her, and how that certain co-workers at the Oakland County Sheriff's Department all wanted to be in her pants and have sexual intercourse with her.

86.   On multiple occasions, Plaintiff Kurtis warned Gooch that she should cease such conversation because it was offensive and get her into serious trouble.

87.   That such conduct on the part of Gooch created a hostile and/or severe work environment which was severe and pervasive.

88.   After the repeated harassment by Gooch continued towards Plaintiff Kurtis despite his efforts to make her stop, he made a complaint to Supervisor Negri.

89.   That Defendant employer was made aware of Plaintiff Kurtis' complaint of sexual harassment, but instead of taking prompt and appropriate action against Gooch, terminated him and ultimately failed to take corrective action against Gooch.

90.   Plaintiff Kurtis' sex was a factor that made a difference in Defendants' decision to subject him to the wrongful and discriminatory treatment described above.

91.   Because Plaintiff Kurtis was a male and not a female, Defendants refused to take his complaint seriously but viewed it as a cover-up for his own alleged indiscretions.

92.   After Plaintiff Kurtis made a complaint of sexual harassment against Gooch
(female), no investigation was conducted and the matter was considered
closed.

93.   Subsequently, Plaintiff Kurtis began to experience frequent and ongoing
hostility and retaliation from Sgt. Green (female), which ended in Plaintiff
Kurtis' termination.

94.   Defendant Oakland County and/or Oakland County Sheriff's Department, by
their agents, representatives, and employees, were predisposed to discriminate
on the basis of sex and acted in accordance with that predisposition.

95.   Defendants' actions were intentional, with reckless indifference to Plaintiff
Kurtis' rights and sensibilities.

96.   If Plaintiff Kurtis had been a Caucasian female, he would not have been
treated in the manner described above.

97.   As a direct and proximate cause of Defendants' wrongful acts and omissions,
Plaintiff Kurtis has sustained loss of earnings, earning capacity, and fringe
benefits and has suffered mental anguish, physical and emotional distress,
humiliation and embarrassment, and loss of professional reputation.

WHEREFORE, Plaintiff Kurtis requests a judgment in favor of Plaintiffs against
Defendants for compensatory, exemplary, and punitive damages in whatever amount in
excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, cost, and
attorney fees.

13

## COUNT II
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## RETALIATION

98.     Plaintiffs reallege and incorporate by reference each and every paragraph of this Complaint as though fully set forth herein.

99.     Title VII protects employees from being subjected to unlawful discrimination and unlawful employment practices.

100.    Plaintiff Kurtis engaged in protected activity under Title VII when he reported and Defendants became aware of the repeated and unwelcome sexual harassment by Sarah Gooch.

101.    Plaintiff Kurtis' complaint was never investigated and the matter was considered closed.

102.    Although Sarah Gooch never complained that Plaintiff Kurtis was sexually harassing her nor did she ever make a complaint, Defendants launched an investigation against Plaintiff Kurtis because they alleged that Plaintiff Kurtis' complaint against Gooch was a cover-up for his own sexual harassment of her.

103.    Defendants suspended Plaintiff Kurtis during the pendency of the investigation against him and ultimately terminated him because he made a sexual harassment complaint against Gooch.

104.    Gooch had an extensive history of engaging in sexually inappropriate behavior in violation of established department policy, yet she was not terminated.

105. After an arbitrator ordered Plaintiff Kurtis back to work in the same position as before, Defendants stripped him of his gun, badge, and uniform, thereby creating a dangerous situation in the dangerous jail setting.

106. Defendants' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

107. As a direct and proximate result of Defendants' wrongful acts, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

WHEREFORE, Plaintiff Kurtis requests a judgment in favor of Plaintiffs against Defendants for compensatory, exemplary, and punitive damages in whatever amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney fees.

## COUNT III
### 42 U.S.C. §1983—SEX HARASSMENT
### FOURTEENTH AMENDMENT EQUAL PROTECTION

108. Plaintiffs reallege and incorporate by reference each and every paragraph of this Complaint as though fully set forth herein.

109. Defendants were at all times relevant to this action, acting under color of law and within the scope of their employment.

110. Deputy Gooch frequently flaunted her breasts to Plaintiff Kurtis, referred to herself as "hot sauce," frequently told Plaintiff Kurtis about her lesbian experiences in college, repeatedly told Plaintiff Kurtis that the employees and her supervisors wanted to have sexual intercourse with her, and told Plaintiff

Kurtis how a fellow employee wanted her to take a ride on his $20,000.00 vibrator (referring to his motorcycle).

111. This harassment was unwelcome by Plaintiff Kurtis and made him uncomfortable.

112. Plaintiff Kurtis repeatedly requested that Gooch cease such inappropriate conversations, but she refused and continued in the harassment.

113. Such conduct created a hostile and/or severe work environment which was severe and pervasive.

114. An investigation was never conducted with respect to Plaintiff Kurtis' complaint and the matter was deemed closed, yet Defendants launched an investigation against Plaintiff Kurtis even though no complaint had been brought against him.

115. Plaintiff Kurtis was removed from his duties and was placed in a booth and hospital watch after he reported the sexual harassment, was suspended, and was ultimately terminated.

116. Defendants' actions were because Plaintiff Kurtis, who was a male, reported that a female co-worker was exhibiting sexually harassing behavior.

117. Defendants' actions on the basis of Plaintiff Kurtis' gender abridged his right to equal protection of the laws, which was in violation of the Fourteenth Amendment to the United States Constitution.

118. As a direct and proximate result of Defendants' actions, Plaintiff Kurtis has suffered and will continue to suffer substantial damages.

**WHEREFORE,** Plaintiff Kurtis requests a judgment in favor of Plaintiffs against Defendants for compensatory, exemplary, and punitive damages in whatever amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, cost, and attorney fees.

**COUNT IV**
**42 U.S.C. § 1983**
**FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS VIOLATION**

119. Plaintiffs reallege and incorporate by reference each and every paragraph of this Complaint as though fully set forth herein.

120. Defendants were at all times relevant to this action acing under color of law and within the scope of their employment.

121. The Fourteenth Amendment prohibited the State from depriving Plaintiff Kurtis of his property interest in continued employment, in his reputation and/or "good name" without due process of law.

122. Under the law of the State of Michigan, Plaintiff Kurtis enjoyed a constitutionally protected property interest in continued employment.

123. On or about November 24, 2004, Douglas Eader authorized the termination of Plaintiff Kurtis' employment.

124. That although a pre-termination hearing was conducted on or about November 24, 2004, such hearing was inadequate, failed to produce evidence necessitating termination, and was not in conformity with procedural due process.

125. During the pre-termination hearing, evidence was withheld and/or not produced and not permitted to be viewed by Plaintiff Kurtis or his

representative, thus prohibiting Plaintiff Kurtis and/or his representative from adequately and informatively respond to the charges.

126. Defendants' conduct amounted to a denial of procedural due process that deprived Plaintiff Kurtis of his protected property and liberty interests in violation of the Fourteenth Amendment of the United States Constitution.

127. As a direct and proximate cause of Defendants' actions, Plaintiff Kurtis has suffered and will continue to suffer substantial damages, including but not limited to, personal and psychological injuries.

   **WHEREFORE,** Plaintiff Kurtis requests a judgment in favor of Plaintiffs against Defendants for compensatory, exemplary, and punitive damages in whatever amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, cost, and attorney fees pursuant to 42 U.S.C. § 1988.

**COUNT V**
**42 U.S.C. § 1983**
**VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION**

128. Plaintiffs reallege and incorporate by reference each and every paragraph of this Complaint as though fully set forth herein.

129. Defendants were at all times acting under color of law and within the scope of their employment.

130. That Plaintiff Kurtis' complaint concerning Gooch's sexual harassment directed toward him was a matter of public concern that outweighed any governmental interest in suppressing the speech.

131.   When Plaintiff Kurtis complained of the sexual harassment directed to him, he was engaged in an activity protected by the First Amendment to the United States Constitution.

132.   That Defendants falsely imprisoned Plaintiff Kurtis, tarnished his reputation, threatened him, and ultimately terminated him in reaction to the exercise of his First Amendment rights.

133.   That Defendants' conduct was designed to silence Plaintiff Kurtis and prevent him from complaining about the violation of his civil rights and would likely prevent an ordinary person from continuing to engage in the exercise of speech.

134.   As a result of the conduct complained of herein, Plaintiff Kurtis suffered deprivation of clearly established rights protected and secured by the First and Fourteenth Amendments to the United States Constitution and by other laws, including his right to free speech, and his right to be free from retaliation for exercising his right to free speech.

135.   That as a direct and proximate cause of Defendants' actions, Plaintiff Kurtis has suffered and continues to suffer damages, including but not limited to, personal and psychological injuries.

136.   As a result of Defendants' violation/deprivation of Plaintiff Kurtis' constitutional rights, Plaintiff Kurtis has a viable claim for compensatory and punitive damages pursuant to 42 U.S.C. § 1983 together with costs, interest, and attorney fees pursuant to 42 U.S.C. § 1988.

### COUNT VI
### VIOLATION OF THE UNITED STATES CONSTITUTION

## 42 U.S.C. § 1983
## FOURTH AMENDMENT FALSE ARREST

137. Plaintiffs reallege and incorporate by reference each and every paragraph of this Complaint as though fully set forth herein.

138. Defendants were at all times acting under color of law and within the scope of their employment.

139. During the baseless and unfounded investigation of Plaintiff Kurtis' alleged sexual harassment of Gooch, Plaintiff Kurtis was forced into an interrogation room and was maliciously questioned for an extended period of time.

140. During the interrogation, and because of the demeanor of Defendants, Plaintiff Kurtis had a mental breakdown, contemplated suicide, and ultimately had to be hospitalized.

141. As a result of the conduct complained of herein, Plaintiff Kurtis suffered deprivation of clearly established rights protected and secured by the Fourth Amendment to the United States Constitution and by other laws including, but not limited to a right to be free from unreasonable searches and seizures.

142. The individually-named Defendants' actions, unlawfully detaining Plaintiff Kurtis without probable cause, reasonable cause, and/or reasonable suspicion were at all times objectively unreasonable and/or deliberately indifferent to Plaintiff Kurtis' rights as set forth herein.

143. That as a direct and proximate cause of Defendants' actions, Plaintiff has suffered and continues to suffer damages including, but not limited to, personal and psychological injuries.

20

144. As a result of Defendants' violations/deprivation of Plaintiff Kurtis' constitutional rights, Plaintiff has a viable claim for compensatory and punitive damages pursuant to 42 U.S.C. § 1983, together with costs, interest, and attorney fees pursuant to 42 U.S.C. § 1988.

## COUNT VII
## LOSS OF CONSORTIUM AS TO PLAINTIFF BRITT

145. Plaintiffs reallege and incorporate by reference each and every paragraph of this Complaint as though fully set forth herein.

146. Plaintiff Britt Harrison is the wife of Plaintiff Kurtis Harrison

147. In consequence of the severe and permanent injuries sustained by Plaintiff Kurtis in the aforementioned incidents, Plaintiff Britt Harrison was deprived of the care, comfort, aid, support, society, and consortium of her husband, and furthermore, he has been unable to perform the duties of a husband which he performed prior and previous to his injuries.

**WHEREFORE,** Plaintiff Britt Harrison respectfully requests this Honorable Court to award damages in her favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars to which she may be found entitled, for compensatory and exemplary damages, and costs, interest, and attorney fees so wrongfully incurred, as well as any other relief she may be entitled to in law and equity as appears appropriate at the time of final judgment.

## COUNT VIII
## CONSTITUTIONAL VIOLATIONS OF OAKLAND COUNTY AND OAKLAND COUNTY SHERIFF'S DEPARTMENT

148. Plaintiffs reallege and incorporate by reference each and every paragraph of this Complaint as though fully set forth herein.

149.   Acting intentionally, recklessly, and/or with deliberate indifference, Defendant Oakland County and Oakland County Sheriff's Department practiced and/or permitted customs and/or policies which resulted in the violations of Plaintiff's constitutional rights complained of herein.

150.   These customs and/or practices and/or policies included, but were not limited to:

    a.   failure to adequately train and/or supervise employees regarding the proper investigation of sexual harassment claims;

    b.   ignoring sexual harassment complaints which have been made;

    c.   retaliating against employees who report and/or make a complaint of sexual harassment;

    d.   Bringing false charges of sexual harassment;

    e.   Manufacturing charge of sexual harassment

151.   Defendants acted intentionally and with deliberate indifference to the obvious and/or known risks to Plaintiff Kurtis' safety, health, reputation, and/or liberty posed by its employees and/or agents acting in conformity with those policies, the Defendants practiced and/or permitted customs and/or policies and/or practices that resulted in the violations of Plaintiff Kurtis' constitutional rights complained of herein.

152.   The facts set forth in the preceding paragraphs constitute a violation of Plaintiff's clearly established constitutional rights and pursuant to 42 U.S.C. § 1983, Plaintiff has a viable claim for compensatory and punitive damages, and costs, interest, and attorney fees.

**WHEREFORE,** Plaintiffs respectfully request this Honorable Court to enter judgment against Defendants in an amount that is fair, just, reasonable, and in excess of Seventy-Five Thousand Dollars ($75,000.00), excluding interest and attorney fees, or any other amount that this Honorable Court deems appropriate and just.

Respectfully Submitted,

LAW OFFICE OF TRAINOR & TOOMBS


BY: _Christopher J. Trainor_
CHRISTOPHER J. TRAINOR (P42449)
Attorney for Plaintiffs
6557 Highland Road, Suite 105
Waterford, MI  48327
(248) 886-8650

Dated:  August 8, 2005
*CJT/scc*

23

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KURTIS HARRISON AND
BRITT HARRISON

        Plaintiffs,

v.

OAKLAND COUNTY, OAKLAND COUNTY
SHERIFF'S DEPARTMENT, MICHAEL BOUCHARD,
GARY MILLER, STACEY GREEN, JAMES AHEARN,
DOUGLAS EADER, ANTHONY BROWN, PAM NEWSOME,
MICHAEL McCABE, H. C. WALLACE, NANCY SCARLET,
TIMOTHY ADKINS, SUSAN SAGE, and SARAH GOOCH
in their individual and official capacities,

        Defendants.

```
JUDGE : Rosen, Gerald E.
DECK  : S. Division Civil Deck
DATE  : 08/09/2005 @ 12:49:31
CASE NUMBER : 2:05CV73079
CMP KURTIS & BRITT HARRISON V.
OAKLAND COUNTY ET AL  (DA) SI
```

*Magistrate Majzoub*

_____/

LAW OFFICE OF TRAINOR & TOOMBS
BY: CHRISTOPHER J. TRAINOR (P42449)
Attorney for Plaintiffs
6557 Highland Road, Suite 105
Waterford, MI 48327
(248) 886-8650

_____/

## DEMAND FOR JURY TRIAL

    **NOW COMES** Plaintiffs, by and through their attorney, CHRISTOPHER J.

TRAINOR, and hereby makes a demand for trial by jury in the above-captioned matter.

                Respectfully Submitted,

                LAW OFFICE OF TRAINOR & TOOMBS

                BY: *Christopher J. Trainor*
                CHRISTOPHER J. TRAINOR (P42449)
                Attorney for Plaintiffs
                6557 Highland Road, Suite 105
                Waterford, MI 48327
                (248) 886-8650

Dated: August 8, 2005
*CJT/scc*

# EXHIBIT A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Detroit District Office                477 Michigan Avenue, Room 865
                                                    Detroit, MI 48226-9704
                                                    (313) 226-4600
                                                    TTY (313) 226-7599
                                                    FAX (313) 226-2778

May 17, 2005

Mr. Kurtis Harrison
2207 McLaren
Burton, MI 48529

Re:     Harrison -v- Oakland County Sheriff
        230-2005-00564

Dear Mr. Harrison:

This letter will inform you that the below named investigator has been assigned your charge
for the completion of the investigation.  Further, it will provide you with an overview of the
information and evidence compiled during the investigation.   Based on the information listed
below, the EEOC has determined that the processing of this matter should be terminated.
This recommendation was made because the information obtained does not support a
conclusion that the statute(s) complained of have been violated.

On or about July 30, 2005,  you filed the above cited charge of discrimination in which you
alleged that you were subjected to sexual harassment and denied equal terms and condition of
employment because of your race, Black and sex, male in violation of Title VII of the Civil
Rights Act of 1964, amended.   EEOC reserves the right and has the authority to discontinue
the processing of and/or terminate the investigation of your charge at any time.

The investigation failed to produce evidence to show that your race and sex were factors
considered for the action(s) taken against you.  There is no evidence to show that you were
denied equal terms and conditions of employment nor is there is evidence to show that you
were sexual harassment.

Records show that you were discharged for having sexually harassed a female co-worker.
Further record show that you had been discharged before for the same reason.  However, you
were reinstated as a result of the Union involvement.

When the evidence fails to meet a "more likely than not" standard, the EEOC has no choice
but to dismiss the charge.  It should be noted that the Dismissal and Notice of Rights which
you will  receive relating to your charge will allow you to proceed with your allegations in
federal court.

**UPON RECEIPT OF THE DISMISSAL AND NOTICE OF RIGHTS, IT IS
IMPERATIVE THAT YOU FILE SUIT IN THE UNITED STATES DISTRICT
COURT WITHIN NINETY (90) DAYS OF RECEIPT.  FAILURE TO DO SO WILL
RESULT IN THE LOSS OF YOUR RIGHT TO PROCEED IN COURT.** An
information sheet which outlines your rights and filing procedures will accompany the
dismissal and Notice of Right.

Page Two
Harrison -v Oakland County Sheriff
230-2005-00564

Further, the EEOC will provide you, upon request, with a list of attorneys who practice in the field of employment discrimination. Please note that the EEOC does not recommend the Attorneys nor make any representation regarding their abilities.

If you have any questions regarding the investigation, please do not hesitate to call. .

Sincerely,

SAM L. JOHNSON
Investigator

JS 44 (Rev. 11/04)

## CIVIL COVER SHEET
County in which this action arose *Oakland*

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
*Kurtis and Britt Harrison*

**DEFENDANTS**
*Oakland County, et al*

**(b)** County of Residence of First Listed Plaintiff *Genesee*
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant *Oakland*
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) *248-886-X650*
*Christopher J. Trainer (P42449)*
*6357 Highland Rd, Ste 105*
*White Lake, MI 48327*

Attorneys (If Known) *05-73079/MKM*

*GRANT A. ROSEN*
*MAGISTRATE JUDGE MONA K. MAZOUR*

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of State Statutes |

### V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): *42 USC 2000e + 42 USC 1983*
Brief description of cause: *Employment Discrimination + Retaliation*

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE
DOCKET NUMBER

DATE *8-9-05*
SIGNATURE OF ATTORNEY OF RECORD *Christopher J. Trainer*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# PURSUANT TO LOCAL RULE 83.11

1.　　　　　Is this a case that has been previously dismissed?　　　　☐ Yes
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.　　　　　Other than stated above, are there any pending or previously
　　　　　　discontinued or dismissed companion cases in this or any other
　　　　　　court, including state court? (Companion cases are matters in which　☐ Yes
　　　　　　it appears substantially similar evidence will be offered or the same　☒ No
　　　　　　or related parties are present and the cases arise out of the same
　　　　　　transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :