**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KURTIS HARRISON and
BRITT HARRISON,

      Plaintiffs,                             Case No. 05-73079

v.                                      Hon. Gerald E. Rosen

OAKLAND COUNTY, *et al.,*

      Defendants.

_____/

**OPINION AND ORDER REGARDING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AND PLAINTIFFS' MOTION TO AMEND COMPLAINT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on ____March 31, 2009_____

PRESENT:  Honorable Gerald E. Rosen
                    Chief Judge, United States District Court

## I.  INTRODUCTION

In this case, Plaintiff Kurtis Harrison has asserted federal claims of sexual

harassment, retaliation, and civil rights violations against his employer, Defendant

Oakland County, and various Oakland County officials and employees.[1]  Plaintiff's

claims arise primarily from his discharge in November of 2004, but also from

_____

[1]Plaintiff's wife, Britt Harrison, has asserted a single claim of loss of consortium.
Because this claim is wholly derivative of her husband's claims, the Court will refer to Kurtis
Harrison as the sole "Plaintiff" throughout the remainder of this opinion.

Defendants' conduct after he was reinstated to his position with the County in July of 2005 as a result of an arbitrator's decision. This Court's subject matter jurisdiction rests upon Plaintiff's assertion of federal claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and his assertion of federal constitutional claims under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331.

Two motions presently are pending before the Court. First, Defendants seek an award of summary judgment in their favor on each of Plaintiff's claims. In support of this motion, Defendants argue (i) that Plaintiff has failed to establish a *prima facie* case of co-worker sexual harassment, (ii) that he likewise has failed to establish a *prima facie* case of retaliation, (iii) that Plaintiff's Fourteenth Amendment equal protection claim mirrors his Title VII sexual harassment claim, and fails for the same reasons, (iv) that Plaintiff has failed to state viable Fourteenth Amendment procedural or substantive due process claims, (v) that Plaintiff has failed to identify speech on a matter of public concern that could sustain his First Amendment retaliation claim, (vi) that Plaintiff cannot state a viable Fourth Amendment false arrest claim based upon his allegedly coerced participation in an internal investigation into his and a co-worker's allegations of sexual harassment, and (vii) that Plaintiff has failed to identify a basis for holding the Defendant County liable for any federal constitutional violations that might have occurred.

Next, in a motion filed just after the close of discovery, Plaintiff seeks leave of the Court to amend his complaint. Through these proposed amendments, Plaintiff seeks to (i) add breach of contract and Federal Arbitration Act claims arising from Defendants'

alleged refusal to comply with the 2005 arbitration award and their alleged breach of an earlier 2003 settlement agreement, and (ii) to supplement his Fourteenth Amendment procedural due process claim with allegations that Defendants arbitrarily refused to fully reinstate him to his former position as directed in the 2005 arbitration award.[2]

Each of these motions has been fully briefed by the parties.  Having reviewed the parties' briefs and accompanying exhibits, as well as the record as a whole, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process.  Accordingly, the Court will decide the parties' motions "on the briefs."  *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.  This opinion and order sets forth the Court's rulings on these motions.

## II.  FACTUAL BACKGROUND

Plaintiff Kurtis Harrison began his employment with Defendant Oakland County in August of 2001, and worked as a sheriff's deputy at the Oakland County jail at the time of his termination in November of 2004.  On July 13, 2004, he was assigned to be the training officer for Defendant Sarah Gooch, a recently hired sheriff's deputy who was still on probationary status at the time.  He was again assigned to be Gooch's training officer the following week, on July 20, 2004.

---

[2]Notably, the proposed amended complaint that is attached as an exhibit to Plaintiff's motion omits the substantive due process claim that is asserted in his existing complaint.  Yet, in his response to Defendants' summary judgment motion (filed after his motion to amend the complaint), Plaintiff insists that this substantive due process claim is viable and should go forward.  Thus, it is unclear whether Plaintiff means to abandon this claim.

As revealed in a later investigation, both Plaintiff and Gooch have accused each other of inappropriate conduct during this period in the latter half of July of 2004. According to Plaintiff, Gooch repeatedly used vulgar and sexually explicit language, referred to past sexual experiences, and opined that one or more co-workers wanted to have sex with her.  Plaintiff testified that he warned Gooch several times during this period that "she needs to watch what she says and how she says it around people because somebody could misunderstand what she means or take it as an inappropriate act and it could get her in trouble."  (Defendants' Motion, Ex. B, Plaintiff's Dep. at 128.)  Yet, Plaintiff did not record any of this inappropriate conduct by Gooch in the written reports he filed as her training or "shadow" officer.  (*Id.* at 127-28.)  Moreover, he denied believing or feeling at any time that Gooch was sexually harassing him, and he acknowledged that Gooch, as a probationary employee, had no power over him during the time they worked together.  (*Id.* at 45-46, 125.)

Gooch's testimony, in contrast, presents a far different picture of her interactions with Plaintiff during this time period.  She testified that Plaintiff commented on her hair and appearance, told her that he had an understanding with his wife that he could have sex with other women, showed her a website where he found sexual partners, asked her whether she would ever sleep with a married man, referred to her by the derogatory name "Hot Sauce," and e-mailed her to ask "why I don't come visit him."  (Defendants'

Motion, Ex. C, Gooch Dep. at 27-28.)[3]  Gooch further testified that she did not complain about Plaintiff's conduct at the time because she was a probationary employee with "no union rights" and was "afraid that I was going to lose my job," and because she "didn't want to go to my command saying I can't get along with these people."  (*Id.* at 30-31.)

This conflict subsequently was brought to the attention of supervisory personnel, however, when Plaintiff reported the matter to supervisor Robert Negri on July 30, 2004. Plaintiff took this action upon learning that Gooch had told a co-worker that Plaintiff was trying to have sex with her, alleging in his complaint that he sought out Negri to complain about "Gooch's completely inappropriate conduct" and to seek this supervisor's assistance in bringing this conduct to an end.  (First Amended Complaint at ¶ 32; *see also* Plaintiff's Response, Ex. F, Arbitrator's 7/20/2005 Decision at 5.)  Negri summoned both Plaintiff and Gooch to his office, where Gooch reportedly denied making the comments attributed to her but nonetheless promised not to make such comments in the future. Upon learning that neither Plaintiff nor Gooch wished to file a complaint, Negri "considered the matter concluded."  (First Amended Complaint at ¶ 35; *see also* Arbitrator's 7/20/2005 Decision at 5.)

That same day, Sergeant Stacey Green, Plaintiff's supervisor, was informed of the

---

[3]Plaintiff acknowledged at least some of this conduct at his deposition.  He testified that he told Gooch that his wife did not care whether he slept with other people, and that he asked her whether she had ever slept with a married man.  (*See* Plaintiff's Dep. at 14, 46.)  The record also includes a July 27, 2004 e-mail message from Plaintiff to Gooch in which he asks, "[H]ey hott sauce, . . . why haven[']t you stopped by to say hey," and urges her to "come visit" him at the jail's "C block."  (Defendants' Motion, Ex. E.)

incident and spoke separately to Plaintiff and Gooch.  Again, neither individual expressed an interest in filing a complaint against the other.  At the conclusion of the interview with Plaintiff, Sergeant Green told him to avoid any further contact with Gooch.  In Plaintiff's view, however, this was not an order, because Sergeant Green "never said it was a direct order" but instead indicated that she did not have time to deal with the matter.  (Plaintiff's Dep. at 55-56.)[4]

A few days later, Sergeant Green informed Lieutenant Herbert Holmes about the conflict between Plaintiff and Gooch, and Holmes decided to speak separately with Gooch and Plaintiff.  According to Holmes's report, Gooch "indicated that it was [Plaintiff] who was harassing her and that it began while she was in training." (Defendants' Motion, Ex. E, Holmes 8/10/2004 Report at 2.)  Plaintiff, in contrast, told Holmes that "he was the one to complain," and that he had warned Gooch "several times regarding her conduct and that everything has to stop."  (*Id.*)  Once again, however, neither Plaintiff nor Gooch expressed a wish to file a complaint, and Holmes recommended to his superiors that "this matter should be closed" in light of "the reluctance of the two primary respondents to file a complaint."  (*Id.*)

The matter went no further until October 20, 2004, when Lieutenant Holmes prepared a memo to Captain H.C. Wallace in which he cited his earlier August 10, 2004

---

[4]According to the complaint, Plaintiff saw Gooch the next day and "apologized if she had gotten into trouble."  (First Amended Complaint at ¶ 39.)  Sergeant Green subsequently "accused [Plaintiff] of disobeying a direct order for him to stay away from [Gooch]," but Plaintiff explained that he did not perceive her instruction as an order.  (*Id.* at ¶ 40.)  In any event, Plaintiff "was never written up" for this incident.  (*Id.* at ¶ 41.)

6

report of the conflict between Plaintiff and Gooch and two subsequent incidents involving Plaintiff, stating that "I now bring these issues forward to you for review."  (Defendants' Motion, Ex. E, Holmes 10/20/2004 Memo.)[5]  At around this same time, Major Douglas Eader evidently learned of the incident between Plaintiff and Gooch.[6]  Eader interviewed Gooch about the incident, and then ordered an investigation of Plaintiff by the Special Investigations Unit ("SIU").

The SIU investigation was conducted by Lieutenant James A'Hearn and Sergeant Gary Miller, who interviewed Plaintiff, Gooch, and a number of other deputies.  Plaintiff alleges that he was "berated, falsely accused, and intensely interrogated over false charges" in the course of his interview by A'Hearn and Miller, resulting in a "nervous breakdown" and his hospitalization.  (First Amended Complaint at ¶ 53; *see also* Plaintiff's Dep. at 106.)[7]  Plaintiff also faults the investigators for failing to pursue leads that would have revealed, in his view, that Gooch was the more culpable party in their conflict back in July of 2004.[8]

---

[5]Neither of the two additional incidents cited in Holmes's memo involved allegations of sexual harassment.  Rather, the first was identified as a "possible prisoner abuse issue," and the second arose from the concerns of co-workers that Plaintiff had been "too aggressive" on a particular occasion.  (*Id.*)

[6]It is not clear from the record whether Eader became aware of this incident as a result of Holmes's memo or through some other means.

[7]This interview forms the basis for Plaintiff's Fourth Amendment claim of false arrest.

[8]Plaintiff points, for example, to evidence he uncovered that Gooch had sent sexually explicit photographs to other deputies, both from home and from work.  Plaintiff alleges that only after he presented this evidence to the SIU investigators did they interview the deputies who had received these photographs, and that, even then, neither the investigators nor the upper-level

Following their investigation, A'Hearn and Miller prepared a detailed six-page report dated November 19, 2004, in which they recounted what they were told in their interviews with Plaintiff, Gooch, and several other deputies. Based on this report, Undersheriff Michael McCabe decided to terminate Plaintiff's employment. Prior to this termination, a human resources manager conducted a pre-termination hearing on November 24, 2004, and determined that there were "reasonable grounds to believe that the charges against [Plaintiff] are true and support the proposed action" of dismissal. (Defendants' Motion, Ex. F.)

Plaintiff appealed his dismissal through his union, and the matter was submitted to arbitration. Following three days of hearings and the submission of post-hearing briefs, the arbitrator ordered the reinstatement of Plaintiff to his past position with back pay. (*See* Plaintiff's Response, Ex. F, Arbitrator's 7/20/2005 Decision at 14.) In so ruling, the arbitrator observed that Gooch was "not exactly a shrinking violet," and found that the Defendant County had failed to establish either (i) "that Gooch gave [Plaintiff] notice that his behavior was unwanted," or (ii) "that [Plaintiff's] behavior created a hostile work environment." (*Id.* at 13.)

According to Plaintiff, Defendants have failed to fully comply with the arbitrator's order of reinstatement, and have treated him unfairly upon his return to work. Plaintiff alleges, for example, that he has been given a "stripped down uniform" without a badge

---

command followed up on this information or took any action against Gooch. (*See* First Amended Complaint at ¶¶ 59-60.)

8

or sheriff department patches, resulting in jail inmates ignoring his orders and commands, and that he has not been deputized or given a gun following his return to the job.  (First Amended Complaint at ¶¶ 71-77; *see also* Plaintiff's Dep. at 74-75.)  He also testified that his supervisor, Sergeant Green, has treated him differently since his return to work.  (*See* Plaintiff's Dep. at 117-21.)  Accordingly, Plaintiff alleges that he "timely filed a charge of Sex Discrimination and retaliation with the Michigan Department of Civil Rights and the United States Equal Employment Opportunity Commission," (First Amended Complaint at ¶ 81), and then brought this suit upon receiving a right-to-sue letter from the EEOC.[9]

### III.  ANALYSIS

**A.    The Standards Governing Defendants' Motion**

In the first of the two motions pending before the Court, Defendants seek summary judgment in their favor on each of Plaintiff's claims.  Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential

---

[9]The right-to-sue letter was attached as an exhibit to Plaintiff's initial complaint, (*see* Complaint, Ex. A), but Plaintiff's EEOC charge has not been made a part of the record.  Notably, the right-to-sue letter states that Plaintiff made claims of sexual harassment and race and sex discrimination in his EEOC charge, but makes no mention of any claim of retaliation.  (*See id.*)

to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must — by affidavits or as otherwise provided in [Rule 56] — set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

**B.   Plaintiff Has Failed to Establish a *Prima Facie* Case of Sexual Harassment.**

In count I of his complaint, Plaintiff has asserted a Title VII claim of sexual harassment, alleging that the conduct of co-worker Sarah Gooch created a hostile work environment. In seeking summary judgment in their favor on this claim, Defendants argue that Plaintiff has failed to establish one or more elements of a *prima facie* case of co-worker sexual harassment. The Court agrees.

In order to establish a *prima facie* case under Title VII of a hostile work environment based on sex, Plaintiff must show (i) that he is a member of a protected

10

class, (ii) that he was subjected to unwelcome sexual harassment, (iii) that the harassment was based on his sex, (iv) that the harassment created a hostile work environment, and (v) that there is a basis for employer liability. *See Clark v. United Parcel Service, Inc.,* 400 F.3d 341, 347 (6th Cir. 2005); *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999). Where, as here, the alleged perpetrator of the harassment is a co-worker, "[a]n employer is liable if it knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Hafford,* 183 F.3d at 513 (internal quotation marks and citations omitted).

Assuming, without deciding, that Plaintiff has established the first three elements of his *prima facie* case, the evidence is insufficient to establish the remaining two prongs of this standard. As the Sixth Circuit has explained, a hostile work environment exists — and, thus, the fourth prong of a *prima facie* case is established — only where a plaintiff is subjected to conduct that is "sufficiently severe or pervasive to alter the conditions of [his] employment." *Abeita v. Transamerica Mailings, Inc.,* 159 F.3d 246, 251 (6th Cir. 1998) (internal quotation marks and citations omitted). The conduct in question "must be judged by both an objective and a subjective standard" — that is, "[t]he conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Abeita,* 159 F.3d at 251 (internal quotation marks and citations omitted). Among the factors to be considered in determining the existence of a hostile work environment are "the frequency of the discriminatory conduct; its severity; whether it is physically

11

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance." *Clark,* 400 F.3d at 351 (internal

quotation marks and citation omitted). "The harassment should be ongoing, rather than a

set of isolated or sporadic incidents." *Clark,* 400 F.3d at 351.

Plaintiff cannot satisfy either the subjective or the objective prongs of this inquiry.

As Defendants point out, to ascertain whether Plaintiff subjectively regarded Gooch's

conduct as abusive or harassing, one need look no further than his own deposition

testimony. When asked whether he "believe[d] today that Gooch sexually harassed you,"

Plaintiff responded, "No." (Plaintiff's Dep. at 45-46.) He reiterated this point later in his

deposition, stating "I didn't feel like I was sexually harassed." (*Id.* at 125.)[10] More

generally, Plaintiff has not identified any evidence in the record, whether in his own

deposition testimony or elsewhere, that he perceived Gooch's conduct as interfering with

his work performance, altering the conditions of his employment, or giving rise to a

hostile or abusive work environment. To the contrary, Plaintiff deemed it unnecessary to

even mention any of Gooch's allegedly inappropriate conduct in the written reports he

filed as her training or "shadow" officer. Moreover, while he warned Gooch repeatedly

to cease this conduct, he explained that he did so, not because of effect of this conduct on

him, but because "somebody could misunderstand what she means or take it as an

---

[10]While Plaintiff suggests that the Court should discount these statements by a "non-lawyer not trained in sexual harassment law," (Plaintiff's Response Br. at 6), he fails to suggest a reason why such training should be necessary in order for Plaintiff to testify as to ***his own subjective impressions*** about the severity of Gooch's conduct.

12

inappropriate act and it could get her in trouble." (Plaintiff's Dep. at 128.) Under this record, even if Plaintiff might perhaps have deemed Gooch's conduct unwelcome,[11] it cannot be said that he subjectively regarded it as so severe or pervasive as to create an abusive or hostile work environment.

Nor does the record establish the objective prong of this inquiry. Gooch's offending conduct toward Plaintiff consisted entirely of vulgar and sexually explicit language. This language, though offensive, was not directed specifically at Plaintiff, conveyed no physical threats, and seemingly was not designed to humiliate Plaintiff. Moreover, this conduct spanned only a two-week period, and evidently occurred largely, if not entirely, on the two days during this period when Plaintiff was serving as Gooch's training officer. As Defendants point out, and as Plaintiff acknowledged at his deposition, Plaintiff (as the training officer) occupied a position of power over Gooch (as a probationary employee), and Gooch had no power over him when she engaged in her offending conduct. Finally, there is no evidence that Gooch's conduct interfered in any significant way with Plaintiff's ability to perform his job. Under the totality of these circumstances, there is no basis upon which a reasonable person could conclude that Gooch's conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create a hostile working environment. *See Faragher v. City of Boca*

---

[11]It is worth noting that the evidence on this point is not especially supportive of this proposition. Rather, the record includes at least some evidence that would indicate that Plaintiff was a willing participant in the sexual banter exchanged with Gooch — *e.g.,* Plaintiff's e-mail to Gooch, and his admission at his deposition that he told Gooch that his wife did not care whether he slept with other people, and that he asked her whether she had ever slept with a married man.

*Raton,* 524 U.S. 775, 788, 118 S. Ct. 2275, 2284 (1998) (explaining that a hostile work environment claim cannot rest upon "the sporadic use of abusive language, gender-related jokes, and occasional teasing" (internal quotation marks and citation omitted)).

Plaintiff also cannot establish the fifth and final prong of her *prima facie* case — namely, that his employer knew or should have known of Gooch's offensive conduct and yet failed to take prompt and appropriate corrective action.  Once Plaintiff brought Gooch's conduct to the attention of a supervisor, Robert Negri, Gooch reportedly promised to cease her offensive comments, and there is no evidence that Plaintiff was ever again on the receiving end of Gooch's vulgar and offensive language.  While Plaintiff faults Defendants for failing to further investigate Gooch's conduct or take any disciplinary action against her, such steps evidently were not necessary to ensure that Gooch ceased any further sexual harassment of Plaintiff.[12]  Similarly, while Plaintiff devotes a large portion of his discussion of his sexual harassment claim to complaints and criticisms of Defendants' investigation of ***his*** conduct, (*see* Plaintiff's Response Br. at 8), he fails to explain how any unfairness in Defendants' investigation of ***him*** might bear upon the effectiveness of the remedial measures taken against ***Gooch.***  So far as the record reveals, these measures were effective in preventing Gooch from engaging in any further sexual harassment of Plaintiff.  Thus, Plaintiff has failed to establish a basis for

---

[12]To the extent that Plaintiff points to Gooch's continuing offensive conduct toward others — *e.g.,* her e-mails of sexually explicit pictures to other deputies — this plainly does not bear upon the effectiveness of the corrective action taken to protect ***Plaintiff*** from further harassment.

14

employer liability, and Defendants are entitled to summary judgment in their favor on

Plaintiff's Title VII claim of sexual harassment.[13]

**C.    Plaintiff Has Failed to Establish a *Prima Facie* Case of Retaliation.**

In Count II of his complaint, Plaintiff alleges that Defendants violated Title VII by

retaliating against him after he had engaged in the protected activity of reporting Gooch's

sexual harassment.[14]   In seeking summary judgment in their favor on this claim,

Defendants contend that Plaintiff cannot establish one of the elements of his *prima facie*

case of retaliation — namely, the existence of a causal connection between his protected

activity and an adverse employment action.  The Court agrees.

Title VII prohibits an employer from "discriminat[ing] against any of his

employees . . . because [the employee] has opposed any practice made an unlawful

employment practice by this subchapter, or because [the employee] has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or

hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  In the absence of direct

---

[13]In his complaint, Plaintiff's allegations in support of his claim of sexual harassment are not limited to the conduct of co-worker Gooch, but also make reference to the alleged "hostility" directed at him by Sergeant Green.  (*See* First Amended Complaint at ¶ 93.)  Yet, in his response to Defendants' motion, Plaintiff makes no mention of Sergeant Green's conduct as supporting a claim of sexual harassment, but instead focuses solely on Gooch's conduct.  Evidently, then, Plaintiff has abandoned any broader claim of sexual harassment based on the conduct of anyone other than Gooch.  In any event, the isolated instances of Green's purported "hostility" toward Plaintiff that appear in the record could not sustain a hostile work environment claim, and neither is there any evidence that Green's purportedly unfair treatment of Plaintiff was based on his sex.

[14]As discussed below, Plaintiff identifies another example of "protected activity" in his response to Defendants' motion.

15

evidence of retaliation,[15] a plaintiff must first establish a *prima facie* case by showing (i) that he engaged in activity protected by Title VII, (ii) that this exercise of protected activity was known to his employer, (iii) that he thereafter suffered an adverse employment action, and (iv) that there was a causal connection between the protected activity and the adverse action. *DiCarlo v. Potter,* 358 F.3d 408, 420 (6th Cir. 2004).

In arguing that Plaintiff cannot establish a *prima facie* case of retaliation, Defendants do not contest the first three elements of this standard. First, they properly recognize that Plaintiff's complaint to a supervisor about Gooch's purportedly harassing conduct qualifies as protected activity. Next, it is clear that Plaintiff's superiors were aware of this complaint, as they conducted multiple interviews of Plaintiff and Gooch about the conflict between them, and ultimately concluded that the matter warranted an SIU investigation. Finally, Defendants acknowledge that Plaintiff suffered an adverse employment action — namely, his discharge. Nonetheless, they insist that Plaintiff cannot establish the fourth and final element of his *prima facie* case — that is, the existence of a causal connection between Plaintiff's protected activity and his discharge.

Plaintiff's response to this argument is puzzling and, more importantly, operates as an utter forfeiture of his opportunity to challenge Defendants' entitlement to summary judgment on this claim. The first page of Plaintiff's response is devoted to a discussion of the Supreme Court's recent ruling in *Burlington Northern & Santa Fe Railway Co. v.*

---

[15]Plaintiff does not claim to have produced such direct evidence here.

16

*White,* 548 U.S. 53, 126 S. Ct. 2405 (2006), which adopts a somewhat more relaxed standard for establishing an adverse employment action under Title VII's anti-retaliation provision.  (*See* Plaintiff's Response Br. at 9-10.)  Plaintiff then spends most of the next two pages of his response identifying various actions which, in his view, would qualify as "adverse" under the *Burlington Northern* standard.  (*See id.* at 10-12.)[16]  This extended discussion of adverse actions is interrupted only briefly by the assertions (i) that Plaintiff engaged in two forms of protected activity by complaining of Gooch's sexual harassment and challenging his discharge through arbitration,[17] and (ii) that Defendants were aware of this protected activity.  (*See* Plaintiff's Response Br. at 10.)  Then, to conclude the discussion of his retaliation claim, Plaintiff contends that "[d]rawing all inferences in favor of Plaintiff as the non-moving party, a jury could reasonably find that [Plaintiff] engaged in protected activity, that defendants took materially adverse action against him, and that the protected activity and the materially adverse action were causally connected." (*Id.* at 12.)

_____

[16]As is all too common throughout his response brief, Plaintiff makes liberal use of hearsay in this passage, despite the prohibition against consideration of hearsay in resolving a summary judgment motion.  *See U.S. Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185, 1189 (6th Cir. 1997).  Plaintiff also offers factual assertions without citation to supporting evidence in the record and, what is worse, assertions that affirmatively misstate the relevant record.  As an example of the latter, he asserts that Negri "confirmed that [Plaintiff] was being punished" through a particular work assignment, when in fact Negri testified that he "didn't know" whether this assignment was intended as "discipline" or as "something to help [Plaintiff] out for his own best interests."  (Plaintiff's Response, Ex. H., Negri Dep. at 75.)  Such misrepresentations of the record and reliance on inadmissible evidence are inexcusable and unacceptable, and Plaintiff's experienced counsel cannot possibly have failed to realize this.

[17]This second form of protected activity is addressed below.

17

There is an obvious and glaring defect in this response to Defendants' motion. As noted earlier, Defendants **have not contested** Plaintiff's showing as to the "adverse action" element of his *prima facie* case of retaliation — nor could they, given that Plaintiff's discharge clearly qualifies as an adverse action, even under the pre-*Burlington Northern* case law. Rather, Defendants' challenge to Plaintiff's claim of retaliation rests solely upon the "causal connection" element of his *prima facie* case. As to this element, however, Plaintiff's response brief has **absolutely nothing to say.** Simply put, no attempt has been made to identify evidence in the record that could be viewed as establishing the requisite causal link between Plaintiff's complaints about Gooch's sexual harassment and a subsequent adverse action. Yet, "[n]othing in either the [Federal] Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record." *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir. 1992). To the contrary, it would be "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Guarino,* 980 F.2d at 406. Accordingly, the Court declines to search the record on Plaintiff's behalf for evidence of a causal link between his protected activity and an adverse action. Rather, in the absence of any effort by Plaintiff to establish this element of his *prima facie* case, the Court finds that Defendants are entitled to summary judgment in their favor on

Plaintiff's Title VII claim of retaliation.[18]

Before turning to Plaintiff's remaining claims, however, one additional matter warrants brief discussion. As noted, Plaintiff suggests that he engaged in protected activity by challenging his discharge through a union grievance process and arbitration, and that he has suffered adverse actions as a result of his success in gaining reinstatement through arbitration. Under Title VII's anti-retaliation provision, protected activity may consist of (i) measures taken in opposition to "any practice made an unlawful employment practice" under the statute, or (ii) making a charge, testifying, assisting or

_____

[18]For what it is worth, Plaintiff's reading of the record elsewhere in his response brief casts considerable doubt on his ability to establish a causal link between his complaint about Gooch's conduct and his subsequent discharge. Although his complaint set the ensuing chain of events in motion, Plaintiff maintains that his superiors immediately prejudged the incident between him and Gooch by "decid[ing] that he could not have been harassed by Gooch" and "focus[ing] upon him as the guilty party." (Plaintiff's Response Br. at 4.) Yet, regardless of whether the investigative process or its outcome was inappropriately biased against Plaintiff and in favor of Gooch, any resulting unfairness or adversity to Plaintiff is actionable under Title VII's anti-retaliation provision only if the biases or prejudgments of Plaintiff's superiors were attributable to ***Plaintiff's complaints of sexual harassment,*** as opposed to some other cause.

The very evidence that Plaintiff cites in challenging the unfairness of the investigation suggests that he could not make this showing. Plaintiff notes, for example, that one of the SIU investigators, Lieutenant A'Hearn, testified that there was "no way in the world [Gooch] could sexually harass [Plaintiff]," since she was "a probationary employee" and "a subordinate of [Plaintiff]" while "[h]e was a training officer." (Plaintiff's Response, Ex. P, A'Hearn Dep. at 19.) Yet, regardless of whether such an assessment by an investigating officer is laudable, appropriate, or an accurate reflection of sexual harassment law, A'Hearn's apparent prejudgment of the incident between Plaintiff and Gooch in no way turned upon Plaintiff's lodging of a sexual harassment complaint against Gooch. To the contrary, it seems clear from A'Hearn's testimony that he would have viewed the situation precisely the same way even if Plaintiff had not lodged a complaint, and the incident between him and Gooch instead had come to management's attention through some other means. Whatever one might say about the fairness of such an investigation, any such unfairness cannot sustain a Title VII retaliation claim unless it was motivated by protected activity.

19

"participat[ing] in any manner in an investigation, proceeding or hearing" under the statute. 42 U.S.C. § 2000e-3(a). Plaintiff's challenge to his discharge through the union grievance process plainly does not qualify as opposition to an employment practice made unlawful under Title VII — he was challenging his employer's determination that he had engaged in sexual harassment, and not opposing anyone else's harassing or discriminatory conduct. Consequently, his challenge may qualify as protected activity only if it satisfies the criteria set forth in the "participation" clause of § 2000e-3(a).

Some courts, at least, have found that an employee who is accused of discrimination or harassment in violation of Title VII may properly be deemed a "participant" in the investigation or proceedings against him, so that this "participation" triggers the protections of Title VII's anti-retaliation provision. *See Deravin v. Kerik,* 335 F.3d 195, 203-05 (2d Cir. 2003); *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1186-89 (11th Cir. 1997). This case law is unavailing to Plaintiff here, however, because the "participation" clause of § 2000e-3(a) extends only to participation in "an investigation, proceeding, or hearing ***under this subchapter.***" 42 U.S.C. § 2000e-3(a) (emphasis added). In light of this statutory limitation, the Sixth Circuit has held that "an employee's participation in an employer's internal investigation into allegations of unlawful discrimination" qualifies as protected activity under Title VII only if this "investigation occurs pursuant to a pending EEOC charge." *Abbott v. Crown Motor Co.,* 348 F.3d 537,

543 (6th Cir. 2003);[19] *see also EEOC v. Total System Services, Inc.,* 221 F.3d 1171, 1174 (11th Cir. 2000) (finding that the "participation" clause of § 2000e-3(a) "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC," but does not encompass "participating in an employer's internal, in-house investigation, conducted apart from a formal charge with the EEOC"). In this case, there is no evidence of any pending EEOC charge at the time Plaintiff challenged his discharge through his union's grievance process. Consequently, his participation in the arbitration proceedings, which were conducted wholly apart from any pending EEOC charge or proceeding, does not qualify as protected activity under Title VII's anti-retaliation provision, and Plaintiff cannot establish a *prima facie* case of Title VII retaliation based upon this activity.[20]

---

[19]The Court notes that the Sixth Circuit reaffirmed this rule in *Crawford v. Metropolitan Government of Nashville & Davidson County,* No. 05-5258, 211 F. App'x 373, 376-77 (6th Cir. Nov. 14, 2006). While the Supreme Court recently reversed this decision, it did so on another ground, and the Court expressly declined to reach the Sixth Circuit's reading of § 2000e-3(a)'s participation clause. *See Crawford v. Metropolitan Government of Nashville & Davidson County*, 129 S. Ct. 846, 853 (2009).

[20]The Court need not decide whether an employer's retaliation against an employee's participation in a union grievance process might violate some other law, because Plaintiff's claim of retaliation in this case has been brought solely under Title VII.

**D.    Plaintiff Has Failed to Establish a *Prima Facie* Case of a Fourteenth Amendment Equal Protection Violation, Nor Has He Produced Evidence that Defendants Stated Reasons for Their Actions Are a Pretext for Gender Discrimination.**

In Count III of his complaint, Plaintiff asserts a claim of sexual harassment under the Fourteenth Amendment's Equal Protection Clause, and his allegations in support of this claim largely mirror the allegations in support of his Title VII sexual harassment claim.  As pled, then, this claim necessarily would fail on the same grounds discussed earlier with respect to Plaintiff's Title VII claim.  Nonetheless, in his response to Defendants' motion, Plaintiff appears to be advancing two additional equal protection claims:  (i) that the SIU investigation into his conduct toward Deputy Gooch was motivated by improper considerations of his sex, and (ii) that his allegedly unfair treatment following his reinstatement also has been motivated by improper considerations of his sex.  Despite these refinements to Plaintiff's equal protection claim, Defendants argue that they remain entitled to an award of summary judgment in their favor because (i) Plaintiff cannot establish a *prima facie* case of sex discrimination, and (ii) he has failed to produce evidence that Defendants' stated reasons for their actions are a pretext for unlawful discrimination.  The Court agrees.

To establish an equal protection claim against his public employer, Plaintiff "must show that the employer made an adverse employment decision with a discriminatory intent and purpose."  *Sutherland v. Michigan Department of Treasury,* 344 F.3d 603, 614 (6th Cir. 2003).  In addressing this claim, the Court applies the same analytical framework

22

as it would if presented with a Title VII claim of sex discrimination. *Sutherland,* 344
F.3d at 614. Specifically, Plaintiff may produce direct evidence of discrimination or,
alternatively, may proceed through the familiar burden-shifting approach adopted by the
Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817,
1824 (1973). *See Weberg v. Franks,* 229 F.3d 514, 522-23 (6th Cir. 2000).

Plaintiff first asserts that he has produced direct evidence of sex discrimination. In
support of this contention, he points to the fact that he initially reported Gooch's sexually
offensive conduct toward him, and yet the ensuing investigation quickly focused on him
as the suspected perpetrator of sexual harassment. Plaintiff further cites the testimony of
one of the SIU investigators, James A'Hearn, that the primary focus of the investigation
was to determine whether Plaintiff had sexually harassed Gooch, and that he did not
"think [it was] possible" that Gooch could have sexually harassed Plaintiff. (Plaintiff's
Response, Ex. P, A'Hearn Dep. at 18.) Finally, he notes the testimony of the individual
who ordered the SIU investigation, Major Douglas Eader, that he made this decision after
he called Gooch to his office and she "broke down in tears" upon recounting what had
happened. (Plaintiff's Response, Ex. K, Eader Dep. at 18.)[21]

---

[21]Once again, Plaintiff seeks to impermissibly rely on hearsay — most notably, the
testimony of union official Gary McClure as to what Gooch told him on various occasions. (*See*
Plaintiff's Response Br. at 14.) Plaintiff also engages in further misrepresentations of the record.
He states, for example, that Gooch told McClure that "she felt pressured into making a sexual
harassment claim against [Plaintiff]," (*id.*), when in fact McClure testified only that she "may
have" made such a statement, (Plaintiff's Response Br., Ex. L, McClure Dep. at 37). Plaintiff
also cites one of the SIU investigators, Gary Miller, as having "confirmed that this was not an
objective investigation," (Plaintiff's Response Br. at 14), when in fact Miller testified that "any
time we start one of these investigations, I'm looking for the truth," (Plaintiff's Response Br.,

The Sixth Circuit has defined direct evidence as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Kroger Co.,* 319 F.3d 858, 865 (6th Cir. 2003). "Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson,* 319 F.3d at 865. The proffered evidence "must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [membership in a protected group], but also that the employer acted on that predisposition." *Hein v. All America Plywood Co.,* 232 F.3d 482, 488 (6th Cir. 2000).

Plaintiff has not produced direct evidence of gender discrimination in Defendants' decision to conduct an SIU investigation into his possible sexual harassment of Gooch, nor in the manner in which this investigation was conducted. Regarding Plaintiff's evidence that this investigation was not begun on an entirely neutral footing, but appeared to focus at the outset on Plaintiff as suspected perpetrator and Gooch as likely victim, none of this evidence establishes that this lack of neutrality and focus on Plaintiff was motivated by Plaintiff's sex. To the extent that the individual who ordered the investigation, Major Eader, was asked to identify the basis for this decision, he explained that when Gooch "broke down into tears" in his office and "started explaining everything

---

Ex. Q, Miller Dep. at 7). Plaintiff and his counsel do not advance their cause in any way by misstating the testimony of witnesses.

that went on," he determined that the matter was "beyond . . . [the] realm" of the less senior officers who had previously looked into it, and that it warranted a more thorough SUI investigation.  (Plaintiff's Response, Ex. K, Eader Dep. at 18-19.)  Even assuming that one could reasonably infer gender bias from the fact that a male officer ordered an investigation after a female deputy broke down in tears in his office, such a conclusion plainly would rest upon one or more inferences, and would not flow directly from Eader's testimony.

Similarly, Plaintiff has not produced direct evidence that the way that the investigation was conducted was motivated by impermissible considerations of gender.  To the extent that the two SIU investigators were asked why they focused on Plaintiff as perpetrator rather than victim, they either (i) cited evidence gathered in their interviews that led them in this direction, (*see* A'Hearn Dep. at 19; Miller Dep. at 12, 15-17), or (ii) opined that, in their view, Plaintiff's status as Gooch's training officer and Gooch's status as a probationary employee made it more likely that he was the perpetrator and less likely, if not impossible, that she had sexually harassed him, (*see* A'Hearn Dep. at 18-19; Miller Dep. at 15, 30).  Again, none of this testimony establishes that the investigation focused on Plaintiff because he was male and Gooch was female.  Consequently, whether or not one could reasonably draw such an inference from this testimony, it does not qualify as direct evidence of gender discrimination.[22]

_____

[22]Notably, Plaintiff significantly undercuts his claim of direct evidence by concluding his discussion of this point with the statement that "giving the benefit of the doubt to Plaintiff as the

Accordingly, Plaintiff must proceed under the *McDonnell Douglas* approach, under which he must first establish a *prima facie* case of gender discrimination. *See Sutherland,* 344 F.3d at 614. To establish a *prima facie* case, Plaintiff must show (i) that he is a member of a protected class, (ii) that he was subject to an adverse employment action, (iii) that he was qualified for his job, and (iv) that he was treated differently from similarly situated employees outside his protected class for the same or similar conduct. *Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir. 2000). There is no dispute here as to the first three of these elements, leaving only the question whether Plaintiff was treated differently from a similarly situated female employee for the same or similar conduct.

In addressing this issue in his response brief, Plaintiff identifies Deputy Gooch as his sole example of a similarly situated employee who was treated differently. (*See* Plaintiff's Response Br. at 15.) Yet, "[i]n order to show that he was 'similarly situated' to [Gooch]," Plaintiff must show "that all of the relevant aspects of his employment situation were nearly identical to those of [Gooch's] employment situation." *Pierce v. Commonwealth Life Insurance Co.,* 40 F.3d 796, 802 (6th Cir. 1994) (internal quotation marks and citation omitted). At the time Plaintiff and Gooch engaged in the conduct he

---

non-moving party, a reasonable jury could conclude that" Defendants' actions were motivated, at least in part, by considerations of gender. (Plaintiff's Response Br. at 14.) To qualify as "direct," it is not enough that evidence would ***permit*** the conclusion that an employer acted with improper motives — the evidence must ***compel*** this conclusion, without the need to draw inferences in favor of the non-moving party.

views as "the same or similar,"[23] Plaintiff was serving as Gooch's training officer, and

Gooch was a probationary employee.  Each of these two distinctions disqualifies Gooch

from consideration as "similarly situated" to Plaintiff.  *See Pierce,* 40 F.3d at 802

(explaining that the plaintiff and another employee were not similarly situated because the

plaintiff exercised supervisory control and the other employee did not); *Cooper v. City of*

*North Olmsted,* 795 F.2d 1265, 1271 (6th Cir. 1986) ("Probationary [employees] . . . do

not stand on equal footing with permanent [employees], and cannot be considered to be

similarly situated."); *White v. Ohio,* No. 99-4359, 2 F. App'x 453, 457 (6th Cir. Jan. 18,

2001) (citing a number of cases holding that probationary and permanent employees are

not similarly situated).  Indeed, as noted earlier, these distinctions were among the

reasons given by those involved in the investigation for focusing on Plaintiff rather than

Gooch.  Accordingly, Plaintiff has not established this element of his *prima facie* case.

Nonetheless, assuming Plaintiff could establish a *prima facie* case, Defendants

would then have the burden of articulating a legitimate, non-discriminatory reason for the

---

[23]Defendants suggest that Gooch is not eligible for comparison with Plaintiff under the fourth prong of the *prima facie* standard because "there is no investigation that determined [Gooch] was guilty of sexual harassment that resulted in discipline."  (Defendants' Reply Br. at 4.)  This argument begs the question, however, because Plaintiff's equal protection claim is premised on the allegation that Plaintiff and Gooch engaged in the same or similar conduct, but that Gooch was neither investigated nor disciplined.  An employer cannot defeat a plaintiff employee's showing on the fourth prong of a *prima facie* case merely by pointing to the employer's own judgment that the plaintiff and another employee did not engage in the same or similar conduct.  Rather, and as discussed below, an employer's belief on this score enters into consideration only in the latter two stages of the *McDonnell Douglas* analysis.  Moreover, to the extent that Defendants contend that Plaintiff and Gooch both were investigated, and thus were treated the same, Plaintiff has produced sufficient evidence from which it could be concluded that Gooch was never truly a focus of the SIU investigation.

adverse employment action they took against Plaintiff. *See Sutherland,* 344 F.3d at 615.

Defendants have met this burden here by explaining that they terminated Plaintiff's

employment after the SIU investigation revealed that he had sexually harassed Gooch.[24]

At this point, then, it becomes Plaintiff's burden to demonstrate that the explanation

proffered by Defendants is a pretext for unlawful sex discrimination. *See Sutherland,* 344

F.3d at 615.

Plaintiff has not produced evidence that would permit such a conclusion here.  In

an effort to show pretext, Plaintiff once again points to evidence that, in his view, reveals

the investigators' predisposition to find that he had sexually harassed Gooch, as well as

---

[24]Just as Defendants sought to short-circuit Plaintiff's showing on the "similarly situated" prong of his *prima facie* case by citing their own findings of different conduct, Plaintiff seeks to short-circuit Defendants' reliance on the results of the SIU investigation at the second stage of the *McDonnell Douglas* inquiry by pointing to his own allegations that this investigation was unfair.  In Plaintiff's view, such reliance by Defendants "is patently ridiculous because it assumes that the investigation can be its own justification."  (Plaintiff's Response Br. at 15.)

Plaintiff's argument on this point appears to rest upon his confusion as to precisely which adverse action Defendants seek to justify through their appeal to the outcome of the SIU investigation.  Plainly, Defendants cite this outcome as the legitimate non-discriminatory reason for Plaintiff's ***discharge***, and not as the reason for commencing the investigation in the first place.  To the extent that Plaintiff maintains that the investigation was flawed, his evidence on this point may be brought to bear in the third stage of the *McDonnell Douglas* analysis, which is addressed below.

Alternatively, perhaps Plaintiff means to suggest that the SIU investigation itself, regardless of its outcome, constituted an "adverse employment action" and thus provides a separate basis for Defendants' liability.  If so, he has not even attempted to show that the investigation alone meets the standards for an "adverse employment action" — namely, that it effected a "material adverse change in the terms or conditions of employment."  *Allen v. Michigan Department of Corrections,* 165 F.3d 405, 410 (6th Cir. 1999) (internal quotation marks and citation omitted).  Moreover, the courts have rejected this theory of adverse action. *See, e.g., Yerdon v. Henry,* 91 F.3d 370, 378 (2d Cir. 1996); *Mack v. Strauss,* 134 F. Supp.2d 103, 114 (D.D.C. 2001).

the arbitrator's determination, contrary to the outcome of the SIU investigation, that

Plaintiff had not engaged in sexual harassment. Taking this last point first, the Sixth

Circuit has held that "as long as an employer has an honest belief in its proffered

nondiscriminatory reason for discharging an employee, the employee cannot establish that

the reason was pretextual simply because it is ultimately shown to be incorrect."

*Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1117 (6th Cir. 2001).

Thus, even if the arbitrator's ruling is viewed as conclusively establishing that Defendants

were wrong in determining that Plaintiff had engaged in sexual harassment,[25] this alone

would not show that this determination was pretextual. Rather, "[t]he key inquiry" is

"whether the employer made a reasonably informed and considered decision before

taking the complained-of action." *Michael v. Caterpillar Financial Services Corp.,* 496

F.3d 584, 598-99 (6th Cir. 2007) (internal quotation marks and citation omitted). The

courts "do not require that the decisional process used by the employer be optimal or that

it left no stone unturned." *Michael,* 496 F.3d at 599 (internal quotation marks and citation

omitted).

Plaintiff's argument on this point is long on rhetoric and short on cogent

discussion of the evidentiary record. He states, for example, that the SIU investigation

"ignored numerous witnesses and evidence," (Plaintiff's Response at 15-16), and yet he

does not identify these witnesses or, more importantly, explain precisely how additional

---

[25]This is a dubious proposition, where the arbitrator's ruling rested almost entirely on the
factual finding that Gooch did not give Plaintiff notice that his behavior was unwanted.

29

witness statements or evidence might have produced a materially different and better outcome.  From the arguments elsewhere in his brief, it can be assumed that this additional evidence would have bolstered Plaintiff's assertion that Gooch frequently used profane and sexually explicit language in the workplace, so that it was unlikely that Plaintiff's conduct toward her was unwanted or rose to the level of harassment.  Yet, the SIU investigators were told this by Plaintiff himself and, to a lesser extent, by other witnesses.  Moreover, the ultimate decision maker, Undersheriff McCabe, testified that Plaintiff had, in his view, "admitted" to conduct that McCabe viewed as "reprehensible," and that this would have warranted Plaintiff's termination without regard to whether Gooch failed to object to this conduct or had engaged in equally culpable conduct. (Plaintiff's Response, Ex. M, McCabe Dep. at 26.)  Under these circumstances, the Court cannot say that the absence of additional, cumulative evidence as to Gooch's activities disqualifies the SIU investigation from providing the basis for a "reasonably informed and considered decision," as required to satisfy the "honest belief" rule.

This leaves only Plaintiff's contention that the SIU investigators were predisposed to believe that he had engaged in sexual harassment and that Gooch was his victim.  Yet, even assuming that this undermines the neutrality of the investigators' report, and thereby undermines the legitimacy of the discharge decision that followed (and was largely based upon) this report, none of this, by itself, shows that Defendants' decisionmaking process and its outcome were pretexts *for sex discrimination.*  As noted earlier with regard to Plaintiff's claim of retaliation, for all of the unfairness, bias, and other deficiencies

30

Plaintiff has identified in the SIU investigation, he has utterly failed to produce evidence from which a trier of fact could conclude that these defects were attributable to any **gender-based** animus held by any of the participants in this process.  Simply put, there is no basis in the record for inferring that any of these participants acted or decided as they did because Plaintiff is male.  In the absence of such evidence, Plaintiff cannot hope to meet his ultimate burden of showing that his discharge was the product of unlawful sex discrimination.

Finally, Plaintiff attempts — albeit only in his response brief, and not his underlying complaint — to sustain his equal protection claim by reference to actions purportedly taken against him after his reinstatement by the arbitrator.  Yet, even if Plaintiff were permitted to, in effect, amend his complaint through his response brief, this claim would fail.  First, to the extent that Plaintiff suggests that this claim of post-reinstatement discrimination may be established through "direct evidence," his theory of "direct evidence" appears to rest solely on his assertions (i) that his supervisor, Sergeant Green, is a woman, and (ii) that she has treated him "less than fairly."  (Plaintiff's Response Br. at 14-15.)  Needless to say, this does not meet the standard for proving discrimination through direct evidence.[26]  Neither can Plaintiff establish a *prima facie*

---

[26]Notably, the individual who ordered the SIU investigation (Major Eader), the two officers who conducted this investigation (Lieutenant A'Hearn and Sergeant Miller), and the senior officer who made the discharge decision (Undersheriff McCabe) all were male.  By Plaintiff's logic — *i.e.,* Sergeant Green's discriminatory motive is proven by the fact that she is a woman — Plaintiff's male superiors would all have been predisposed to favor him over Deputy Gooch in the investigation leading to his discharge.  Curiously, as to this sequence of events, Plaintiff invites the Court to draw precisely the opposite inference.

case of post-reinstatement sex discrimination where, most notably, he has not even

attempted to identify a similarly situated employee who has been treated differently for

the same or similar conduct.  Accordingly, his appeal to post-reinstatement activities does

not save his equal protection claim from an award of summary judgment in Defendants'

favor.

**E.     Plaintiff's Procedural and Substantive Due Process Claims Lack Legal and Evidentiary Support.**

The next two claims in Plaintiff's complaint warrant little discussion.  First, in

count IV, Plaintiff alleges that his Fourteenth Amendment right to procedural due process

was violated when Defendants provided an inadequate pre-termination hearing prior to

his November 2004 discharge.  In seeking summary judgment in their favor on this claim,

Defendants point to the Sixth Circuit's ruling that "[w]here there is a system of post-

termination procedures available to the employee that includes a neutral decisionmaker

and/or arbitration, coupled with a pretermination 'right of reply' hearing, then the

employee has received all the process due under the Constitution."  *Farhat v. Jopke,* 370

F.3d 580, 596 (6th Cir. 2004).  Defendants contend that the pre-termination hearing

afforded to Plaintiff here, combined with the subsequent opportunity to challenge his

termination through arbitration, more than suffices to meet this standard.

True to form, Plaintiff does not contest this point in his response brief, but instead

seeks to rest his procedural due process claim upon a wholly different set of facts and

allegations.  Specifically, he does not challenge the procedures surrounding his

32

termination, but rather complains of Defendants' "failure to completely reinstate him" in accordance with the arbitrator's ruling. (Plaintiff's Response Br. at 17.) He then suggests, without citation to any authority, that this failure triggered his constitutional right to another hearing. Yet, absent a protected property interest, no further process was due. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S. Ct. 1487, 1491 (1985). Plaintiff has failed to identify any authority for his posited "property right" to full reinstatement, including being deputized and given a badge, (*see* Plaintiff's Response Br. at 17), and the Court declines to search for such authority on his behalf. In any event, the arbitrator closed his decision by inviting the parties to return and seek further relief in the event that any "disputes . . . may develop in the implementation of this award," (Plaintiff's Response, Ex. F, Arbitrator's Decision at 14), and Plaintiff's failure "to allege and prove the inadequacy of [this] remed[y] . . . is fatal to his procedural due process claim." *Farhat,* 370 F.3d at 597.

Next, in count V of his complaint, Plaintiff alleges that Defendants violated his Fourteenth Amendment right to substantive due process following his reinstatement by putting him in the dangerous predicament of working in the Oakland County jail without the appropriate badges. The Sixth Circuit has held that "in a non-custodial setting, in order to establish liability for violations of substantive due process under [42 U.S.C.] § 1983, a plaintiff must prove that the government actor either intentionally injured the plaintiff or acted arbitrarily in the constitutional sense." *Upsher v. Grosse Pointe Public School System,* 285 F.3d 448, 453 (6th Cir. 2002). Plaintiff has neither alleged nor shown

33

that any Defendant intentionally injured him.  Next, while Plaintiff generally ascribes "punitive" motives to Defendants' failure to deputize him and give him a badge, he has not presented any "proof that [any Defendant] engaged in arbitrary conduct intentionally designed to punish [him]" — *i.e.,* conduct akin to "conscience shocking behavior." *Upsher,* 285 F.3d at 453 (internal quotation marks and citations omitted).  Rather, his own testimony as to the "difficulties" caused by the lack of a badge, and the testimony of others as to the "importan[ce]" of a badge, (Plaintiff's Response Br. at 18), fall well short of evidencing the arbitrary and intentionally punitive conduct necessary to sustain a substantive due process claim.

**F.     Plaintiff Has Not Identified Any Speech as a Citizen on a Matter of Public Concern, As Necessary to Sustain His First Amendment Retaliation Claim.**

In count VI of his complaint, Plaintiff alleges that Defendants unlawfully retaliated against him for exercising his protected First Amendment right of free speech. Specifically, he points to his complaint about Deputy Gooch's sexual harassment as protected speech on a matter of public concern, and he alleges that Defendants took a number of actions against him in response to this speech.  Defendants now seek summary judgment in their favor on this claim, arguing that Plaintiff did not speak on a matter of public concern, and that, in any event, there is no evidence of a causal connection between any such speech and any adverse action.  The Court agrees.

"In order for a government employee's speech to warrant First Amendment protection, the Supreme Court's . . . decisions have long imposed the threshold

34

requirements that the employee (1) must have spoken 'as a citizen,' and (2) must have 'address[ed] matters of public concern.'" *Weisbarth v. Geauga Park District,* 499 F.3d 538, 542 (6th Cir. 2007) (citation omitted). As the Sixth Circuit observed in *Weisbarth,* 499 F.3d at 542, the Supreme Court "clarified the first of these requirements" in its ruling in *Garcetti v. Ceballos,* 547 U.S. 410, 126 S. Ct. 1951 (2006). Specifically, the Court held in that case that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti,* 547 U.S. at 421, 126 S. Ct. at 1960.

In the wake of *Garcetti,* the courts generally have held that internal complaints to supervisors about workplace conditions or co-worker misconduct do not qualify as speech "as a citizen" that is entitled to First Amendment protection. *See, e.g., Davis v. McKinney,* 518 F.3d 304, 315 (5th Cir. 2008); *Boyce v. Andrew,* 510 F.3d 1333, 1343-44 (11th Cir. 2007); *Foraker v. Chaffinch,* 501 F.3d 231, 241-43 (3d Cir. 2007); *Freitag v. Ayers,* 468 F.3d 528, 546 (9th Cir. 2006). In this case, regardless of whether Plaintiff had an explicit, formal duty to report to his supervisor about a co-worker's harassing conduct, such a report plainly is among the "duties [a sheriff's deputy] actually is expected to perform." *Garcetti,* 547 U.S. at 424-25, 126 S. Ct. at 1962. Indeed, the record is clear that Plaintiff, as Gooch's training officer at the times in question, had an obligation to make written reports of Gooch's activities. Accordingly, the Court finds that Plaintiff was not speaking "as a citizen" when he complained to his superiors about Gooch's

35

sexually inappropriate conduct.

Neither can his speech be properly characterized as addressing a "matter of public concern."  In *Jennings v. County of Washtenaw,* 475 F. Supp.2d 692, 706-07 (E.D. Mich. 2007), this Court held that the plaintiff in that case had not spoken on a matter of public concern when she reported a co-worker's security breach to her supervisor.  Similarly, in *Nair v. Oakland County Community Mental Health Authority,* 443 F.3d 469, 478 (6th Cir. 2006), the Sixth Circuit held that a letter written by the plaintiff did not address matters of public concern where it "focuse[d] on the reduction of [the plaintiff's] responsibilities and hours," and requested a remedy that "would directly affect [the plaintiff] alone." Likewise, Plaintiff's complaint here addressed only a personal conflict between himself and Deputy Gooch, and he has alleged that his objective in bringing the matter to the attention of a supervisor was "that he wanted all the things Gooch had been saying to stop."  (First Amended Complaint at ¶ 33.)  This complaint, then, addressed only a private workplace grievance, and not a public concern, and Defendants therefore are entitled to summary judgment in their favor in Plaintiff's First Amendment retaliation claim.[27]

**G.    Plaintiff Has Failed to Identify Any Legal Basis for His Fourth Amendment False Arrest Claim.**

Finally, in count VII of his complaint, Plaintiff alleges that he was unlawfully

---

[27]In addition, the Court agrees with Defendants that the record fails as a matter of law to establish a causal connection between Plaintiff's speech and any subsequent adverse action, for the same reasons addressed earlier in the Court's discussion of Plaintiff's Title VII retaliation claim.

36

seized in violation of the Fourth Amendment when Defendants compelled his attendance

at an interview during the SIU investigation.  In seeking summary judgment in their favor

on this claim, Defendants contend that this interview cannot possibly qualify as an

unreasonable seizure prohibited by the Fourth Amendment, where Plaintiff conceded at

his deposition that attending this interview was part of his job and that the SIU

investigators had a right to interview him.  (*See* Plaintiff's Dep. at 131.)

Plaintiff's response to this challenge is entirely perfunctory, consisting of the

assertions that he was "nervous[]" and "clearly unwell" during the SIU interview, that he

faced the "threat of firing" if he did not comply, and that these circumstances, in his view,

establish the elements of a state-law claim of false arrest under the authority of a single

Michigan appellate court decision.  (Plaintiff's Response Br. at 21.)  Because Plaintiff has

not endeavored to identify any relevant ***federal*** law that might support a Fourth

Amendment claim under the circumstances presented here, the Court deems this claim to

have been abandoned.[28]

## H.    In Light of the Court's Disposition of Plaintiff's Federal Claims, It Declines to Grant Leave for Plaintiff to Pursue Additional Claims That Would Lie Within the Court's Supplemental Jurisdiction.

Apart from Defendants' summary judgment motion, Plaintiff has filed a motion

---

[28]Having awarded summary judgment to Defendants as to all of Plaintiff's § 1983 claims asserting federal constitutional violations, it follows that there is no basis for the imposition of liability against Defendants Oakland County and the Oakland County Sheriff's Department under count IX of Plaintiff's complaint.  *See Scott v. Clay County,* 205 F.3d 867, 879 (6th Cir. 2000).  In addition, the loss of consortium claim in count VIII of the complaint is subject to dismissal.

seeking leave to amend his complaint. Specifically, Plaintiff wishes to assert two additional claims: (i) a breach of contract claim arising from Defendants' alleged failure to comply with the terms of a settlement agreement executed in 2003 to resolve an earlier incident in which Plaintiff was accused of sexual harassment, and (ii) a claim under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* through which Plaintiff seeks to compel Defendants' full compliance with the arbitrator's 2005 order of reinstatement. Defendants oppose this motion, arguing (i) that Plaintiff unduly delayed the filing of his motion until after the close of discovery, despite earlier knowledge of all of the facts upon which the requested amendments are based, and (ii) that the requested amendments would be futile.

In light of the Court's disposition of Defendants' summary judgment motion, all of the federal claims advanced in Plaintiff's existing complaint have been dismissed. Of the two claims that Plaintiff now seeks to add, one (the breach of contract claim) explicitly arises under state law, and the other (the FAA claim), while citing to a federal statute, requires a separate jurisdictional basis to be heard in federal court. *See, e.g., City of Detroit Pension Fund v. Prudential Securities Inc.,* 91 F.3d 26, 29 (6th Cir. 1996); *General Atomic Co. v. United Nuclear Corp.,* 655 F.2d 968, 969 (9th Cir. 1981).[29]

---

[29]It is true that arbitration obligations that arise out of a collective bargaining agreement can support federal question jurisdiction under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *See American Federation of Television & Radio Artists v. WJBK-TV,* 164 F.3d 1004, 1008 (6th Cir. 1999). Section 301 of the LMRA does not provide a basis for jurisdiction here, however, because Plaintiff is employed by a local governmental unit, Oakland County. *See City of Saginaw v. Service Employees International Union, Local 446-M,* 720 F.2d 459, 462 (6th Cir. 1983).

Accordingly, Plaintiff's proposed claims would lie within this Court's supplemental jurisdiction.  Having resolved all of the claims over which it has original jurisdiction, the Court finds that Plaintiff's proposed amendments would be futile, where the Court would in any case decline to exercise supplemental jurisdiction over the claims Plaintiff seeks to assert.  *See* 28 U.S.C. § 1367(c)(3).  Thus, Plaintiff's motion is denied.[30]

---

[30]In light of this ruling, the Court necessarily expresses no view as to the viability of the additional claims Plaintiff seeks to assert.

## IV.  **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' motion for

summary judgment (docket #110) is GRANTED.  In light of this ruling, IT IS FURTHER

ORDERED that Plaintiffs' motion to amend complaint (docket #103) is DENIED, in light

of the Court's decision not to exercise supplemental jurisdiction over the claims that

Plaintiff seeks to add through this motion.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  March 31, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record
on March 31, 2009, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager